# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS M. DOLAN, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>   v.<br><br>UNITED AIRLINES, INC., THE BOARD OF DIRECTORS OF UNITED AIRLINES, INC., THE ADMINISTRATIVE COMMITTEE, THE INVESTMENT COMMITTEE, THE VENDOR SELECTION AND OVERSIGHT COMMITTEE, and JOHN DOES 1-40,<br><br>     Defendants. | Case No.: |

## CLASS ACTION COMPLAINT

Plaintiff Thomas M. Dolan ("Plaintiff"), by and through his attorneys, on behalf of the United Airlines Pilot Retirement Account Plan (the "Plan"),[1] and all others similarly situated, alleges as follows:

## I. INTRODUCTION

1.  Plaintiff brings this class action pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciaries, which include United Airlines, Inc. ("United" or the "Company"), the Board of Directors of United during the Class Period[2] ("Board") and its members, the Plan's Administrative

---

[1] The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

[2] The "Class Period" is defined as December 16, 2019 through the date of judgment, both dates inclusive.

Committee and its members, the Plan's Investment Committee and its members, and the Vendor Selection and Oversight Committee and its members (together with the Administrative Committee and the Investment Committee, the "Committees") for breaches of their fiduciary duties during the Class Period.

2.      As set forth herein, Plan participants invested, in part, in the Plan's Large Cap Growth Equity Fund ("Large Cap Fund").

3.      The Large Cap Fund is designed to have "risk characteristics comparable to those of the Russell 1000 Growth Index."

4.      But, as set forth herein, the Large Cap Fund substantially underperformed the Russell 1000 Growth Index on a 1-, 3-, 5-, and 10-year basis as of December 31, 2024.

5.      To safeguard Plan participants and beneficiaries, ERISA imposes a strict fiduciary duty of loyalty and prudence upon employers and other plan fiduciaries. Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Hughes v. Northwestern Univ.*, 595 U.S. 170, 172 (2022) (quoting § 1104(a)(1)(B)). These twin fiduciary duties are "the highest known to the law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009).

6.      The U.S. Department of Labor ("DOL") has explicitly stated that employers are held to a "high standard of care and diligence" and must, among other duties, both "establish a prudent process for selecting investment options and service providers" and "monitor investment options and service providers once selected to see that they continue to be appropriate choices."[3]

---

[3] U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, (Aug. 2013), at n.3, available at: A Look at 401(k) Plan

7.      The Supreme Court recently reiterated that in interpreting "ERISA's duty of prudence in light of the common law of trusts," a fiduciary "has a continuing duty of some kind to monitor investments and remove imprudent ones" and a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. *Hughes*, 595 U.S. at 175.

8.      Most participants in 401(k) plans expect that their 401(k) accounts will be their principal source of income after retirement. Although 401(k) accounts are fully funded at all times, that does not prevent plan participants from losing money on poor investment choices by plan sponsors and fiduciaries, whether due to poor performance, high fees or both.

9.      At all times during the Class Period, the Plan had billions of dollars in assets under its management, which were, and continue to be, entrusted to the care of Defendants – the Plan's fiduciaries.

10.     On December 31, 2023, the Large Cap Fund had net assets of more than $1 billion. On December 31, 2024, the Plan had net assets of more than $11.8 billion and 19,388 participants with account balances.

11.     The Plan's assets under management qualify it as a mega plan in the defined contribution plan marketplace and among the largest plans in the United States. As a mega plan, the Plan had substantial bargaining power regarding the fees and expenses that were charged against participants' investments.

12.     Plaintiff alleges that during the Class Period, Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the fiduciary duties they owed to the Plan, to Plaintiff, and to the other participants of the Plan by,

---

Fees (dol.gov) (last visited February 13, 2025).

*inter alia*, (1) maintaining certain funds in the Large Cap Fund in the Plan despite the funds' consistent underperformance when compared to the relevant benchmark; and (2) failing to monitor the Committees to ensure that it was adequately performing its fiduciary obligations.

13.     Defendants' mismanagement of the Plan, to the detriment of participants and beneficiaries, constitutes a breach of the fiduciary duty of prudence, in violation of 29 U.S.C. § 1104. Their actions were contrary to actions of a reasonable fiduciary and cost the Plan and its participants millions of dollars.

14.     Based on this conduct, Plaintiff asserts claims against Defendants for breach of the fiduciary duties of prudence (Count One) and failure to monitor fiduciaries (Count Two).

## II. JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq*.

16.     This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and/or have significant contacts with this District, and because ERISA provides for nationwide service of process.

17.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391, because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

### III.     PARTIES

**Plaintiff**

18.     Plaintiff Thomas M. Dolan ("Dolan") resides in Arlington, Virginia. During his employment, Plaintiff Dolan participated in the Plan by investing in the Large Cap Fund, which is the subject of this lawsuit. Plaintiff Dolan suffered injury to his Plan for being subject to the underperformance of the Large Cap Fund, as discussed below.

19.     Plaintiff has standing to bring this action on behalf of the Plan because he participated in the Plan during the Class Period and was injured by Defendants' unlawful conduct. Plaintiff is entitled to receive benefits in the amount of the difference between the value of his account currently, or as of the time the account was distributed, and what the account is or would have been worth, but for Defendants' breaches of fiduciary duty as described herein.

20.     Plaintiff Dolan did not have knowledge of all material facts (including, among other things, the investment alternatives that are comparable to the investments offered within the Plan) necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**Defendants**

**The Company Defendant**

21.     Defendant United is the largest airline in the world, flying 140 million people to more than 300 destinations across six continents every year.[4] United is the Plan sponsor, the Plan Administrator (as defined in Section 3(16) of ERISA), and a named fiduciary. It is a Delaware corporation with its principal place of business at 233 S. Wacker Dr., Chicago, IL 60606. *See* 2023 Form 5500, Annual Return/Report of Employee Benefit Plan, at 1.

---

[4] *About United*, United, available at: https://www.united.com/en/us/fly/company/company-info/about-united.html (last visited February 14, 2025).

22.     The Company, acting through its Board of Directors, appointed fiduciaries of the Plan, including the Administrative Committee, Investment Committee, and the Vendor Selection and Oversight Committee. Under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

23.     United, through its Board, had a fiduciary duty to monitor and supervise the Plan's fiduciaries, including the Committees and its members during the Class Period. However, as set forth in detail below, the Committees failed to carry out these fiduciary duties prudently.

24.     For the foregoing reasons, at all times during the Class Period, United was a fiduciary of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because it exercised discretionary authority over management or disposition of Plan assets and to appoint and/or monitor the other fiduciaries, which had control over Plan management and/or authority or control over management or disposition of Plan assets.

**Board Defendants**

25.     United, acting through its Board of Directors, appointed Plan fiduciaries, including the Committees. Under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

26.     During the Class Period, the Board of Directors included: Carolyn Corvi; James A. C. Kennedy; J. Scott Kirby; Laysha Ward; Richard Johnsen; Matthew Friend; Rosalind Brewer; Michelle Freyre; Barney Harford; Michele J. Hooper; Walter Isaacson; Edward M. Philip; Edward L. Shapiro; James M. Whitehurst; Anne Worster; Garth Thompson; Michael Hamilton; David J. Vitale; Todd M. Insler; Sito J. Pantoja; Oscar Munoz; Garth Thompson; and Jane C. Garvey.[5]

---

[5] *See* United, 2025 Proxy Statement on Schedule 14A at 20-33 (filed with the SEC Apr. 10, 2025), https://www.sec.gov/ix?doc=/Archives/edgar/data/0000100517/000155837025004681/tmb-20250521xdef14a.htm#Item1ElectionofDirectors_1; United, 2024 Proxy Statement on Schedule 14A at 19-33 (filed with the SEC Apr. 12, 2024),

27.     Accordingly, the Board and each of its members during the Class Period (collectively referred to herein as the "Board Defendants") are or were fiduciaries of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), because each exercised discretionary authority over management or disposition of Plan assets and to appoint and/or monitor the other fiduciaries, which had control over Plan management and/or authority or control over management or disposition of Plan assets.

**<u>Administrative Committee Defendants</u>**

28.     United has delegated certain administrative and investment related authorities and responsibilities to the Administrative Committee. The Administrative Committee and its members are named fiduciaries of the Plan.

29.     The Administrative Committee "is responsible for plan administration [and] has discretion to determine appropriate courses of action in light of the reason and purpose for which the benefit program at issue is established and maintained." Further, the Administrative Committee has "full discretionary authority to interpret all Plan documents and to make all interpretive and factual determinations as to whether any individual is entitled to receive any benefits under the terms of the Plan."

---

https://www.sec.gov/ix?doc=/Archives/edgar/data/0000100517/000155837024005036/tmb-20240522xdef14a.htm; United, 2023 Proxy Statement on Schedule 14A at 31-43 (filed with the SEC Apr. 13, 2023), https://www.sec.gov/ix?doc=/Archives/edgar/data/0000100517/000110465923045102/tm238497d2_def14a.htm; United, 2022 Proxy Statement on Schedule 14A at 21-31 (filed with the SEC Apr. 14, 2022), https://www.sec.gov/Archives/edgar/data/100517/000110465922046108/tm222497-1_def14a.htm#tI1EO1; United, 2021 Proxy Statement on Schedule 14A at 12-19 (filed with the SEC Apr. 15, 2021), https://www.sec.gov/Archives/edgar/data/100517/000110465921050803/tm212376-3_def14a.htm; United, 2020 Proxy Statement on Schedule 14A at 7-15 (filed with the SEC Apr. 9, 2020), https://www.sec.gov/Archives/edgar/data/100517/000104746920002218/a2241177zdef14a.htm; United, 2019 Proxy Statement on Schedule 14A at 6-13 (filed with the SEC Apr. 11, 2019), https://www.sec.gov/Archives/edgar/data/100517/000104746919002160/a2238290zdef14a.htm#dc12501_proposal_no._1__election_of_directors.

30.     The Committee's fiduciary duties and responsibilities with respect to the management and oversight of the Plan include:

- determining all questions relating to the eligibility of Employees to participate;

- construing and interpreting the terms and provisions of the Plan;

- computing, certifying to, and directing the Trustee, either directly or through a delegate, with regard to the amount and kind of benefits payable to Participants and their Beneficiaries;

- authorizing, either directly or through a delegate, all disbursements by the Trustee from the Trust;

- maintaining all records that may be necessary for the administration of the Plan other than those maintained by the Trustee;

- providing for the disclosure of all information and the filing or provision of all reports and statements to Participants, Beneficiaries or governmental agencies as shall be required by ERISA or other law, other than those prepared and filed by the Trustee;

- making and publishing such rules for the regulation of the Plan as are not inconsistent with the terms hereof;

- making decisions on claims in a manner consistent with regulations of the Secretary of Labor for presentation of claims by Participants and Beneficiaries for Plan benefits, which shall include consideration of such claims, review of claim denials, and issuance of a decision on review. Such claims decisions shall be made in accordance with the claims procedures set forth in Article 10; and

- determining its manner of acting, including but not limited to allocating responsibilities between its members.

31.     The Administrative Committee exercised this discretionary authority throughout the Class Period. Thus, the Administrative Committee and each of its members were fiduciaries of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because each exercised discretionary authority over management or disposition of Plan assets.

32.     The Administrative Committee "consists of the individuals appointed by the Company's Executive Vice President (or Senior Vice President, if there is no Executive Vice President) of Human Resources." Without discovery, Plaintiff does not have access to documents and information sufficient to identify any members of the Administrative Committee during the Class Period. Accordingly, the unnamed members of the Administrative Committee during the Class Period are referred to herein as John Does 1-10.

33.     The Administrative Committee, the Investment Committee, the Vendor Selection and Oversight Committee, and John Does 1-40 (described below) are collectively referred to herein as the "Committee Defendants."

34.     As alleged in detail below, the Committee Defendants failed to properly discharge their fiduciary duties and responsibilities during the Class Period.

**Investment Committee Defendants**

35.     The Investment Committee "is responsible for monitoring the management of the assets of the Plan and for establishing rules for participant-directed investments."

36.     The Investment Committee is a named fiduciary "with respect to the management or control of investments."

37. The Plan describes the Investment Committee's responsibilities as follows:

- to select, retain, and monitor such consultants, actuaries, accountants, attorneys, and other agents and Employees as the Investment Committee may deem necessary or advisable for the proper performance of its duties under the Plan and Trust, including but not limited to an investment adviser;

- to select, retain and monitor, with the advice of the investment advisor, one or more investment managers to invest the Trust assets or any part thereof. Where investment authority, management or control of Trust assets is delegated to an investment manager, the investment manager shall be the Fiduciary with respect to the investment, management and control of such assets;

- to select and monitor, with the advice of the investment manager, the investments to be offered as investment options under the Plan;

- to adopt an investment policy statement; and

- to evaluate the performance of the Trustee and any investment manager.

38. Other responsibilities of the Investment Committee include:

- limiting transfers into and out of a particular investment option and passing redemption and transaction fees to members' accounts;

- imposing transaction fees, redemption fees, and expenses in connection with investing in one or more of the investment options available under the Plan ;

- limiting certain participants who demonstrate a pattern of excessive trading ; and

- voting with respect to matters under the Investment Committee's control

39. United and the Air Line Pilots Association, International each may appoint up to

three members and one alternate member of the Investment Committee. Without discovery, Plaintiff does not have access to documents and information sufficient to identify any members of the Investment Committee during the Class Period. Accordingly, the unnamed members of the Investment Committee during the Class Period are referred to herein as John Does 11-20.

40. As alleged in detail below, the Committee Defendants failed to properly discharge their fiduciary duties and responsibilities during the Class Period.

**<u>Vendor Selection and Oversight Committee Defendants</u>**

41. The Vendor Selection and Oversight Committee ("VSOC") and its members are named fiduciaries in the Plan. ("The members of the VSOC shall be Fiduciaries solely to the extent of their powers and duties as set forth above and shall not have oversight of the Administrative Committee or otherwise have any duties or responsibilities with respect to administration of the Plan.")

42. The Plan explains that "the VSOC shall have the authority and responsibility to select, monitor and replace administrative vendors of the Plan (including but not limited to the Trustee, custodian, recordkeeper, and brokerage firm) and to periodically review vendor performance. The power to select any vendor shall necessarily include the power to approve the fees set forth in any agreement between the Company and such vendor."

43. Members of the VSOC are appointed by the Company and the Air Line Pilots Association, International, which each may appoint up to three members to the VSOC.

44. Without discovery, Plaintiff does not have access to documents and information sufficient to identify any members of the Vendor Selection and Oversight Committee during the Class Period. Accordingly, the unnamed members of the Administrative Committee during the Class Period are referred to herein as John Does 21-30.

11

45.     As alleged in detail below, the Committee Defendants failed to properly discharge their fiduciary duties and responsibilities during the Class Period.

**<u>Additional John Doe Defendants</u>**

46.     To the extent that there are additional committees, officers, employees and/or contractors of United who are/were fiduciaries of the Plan during the Class Period, or were hired as an investment manager for the Plan during the Class Period, the identities of whom are currently unknown to Plaintiff, Plaintiff reserves the right, once their identities are ascertained, to seek leave to join them to the instant action. Thus, without limitation, unknown "John Doe" Defendants 31-40 include, but are not limited to, United officers, employees and/or contractors who are/were fiduciaries of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), during the Class Period.

## IV. CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following proposed class ("Class"):[6]

> All persons, except Defendants and their immediate family members who were participants in or beneficiaries of the Large Cap Fund portion of the Plan at any time between December 16, 2019 through the date of judgment, both dates inclusive (the "Class Period").

48.     The members of the Class are so numerous that joinder of all members is impractical. As of December 31, 2024, the Plan had 19,388 participants with account balances.

49.     Plaintiff's claims are typical of the claims of the members of the Class. Like other Class members, Plaintiff participated in the Large Cap Fund in the Plan and has suffered injuries

---

[6] Plaintiff reserves the right to propose other or additional classes or subclasses in his motion for class certification or subsequent pleadings in this action.

as a result of Defendants' mismanagement of the Plan. Defendants treated Plaintiff consistently with other Class members and managed the Plan as a single entity. Plaintiff's claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class have been similarly affected by Defendants' wrongful conduct.

50.     There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

    A.  Whether Defendants are/were fiduciaries of the Plan;

    B.  Whether Defendants breached their fiduciary duty of prudence by engaging in the conduct described herein;

    C.  Whether the Defendants responsible for appointing other fiduciaries failed to adequately monitor their appointees to ensure the Plan was being managed in compliance with ERISA;

    D.  The proper form of equitable and injunctive relief; and

    E.  The proper measure of monetary relief.

51.     Plaintiff will fairly and adequately represent the Class and has retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

52.     This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the

members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

53.     In the alternative, certification under Rule 23(b)(2) is warranted because the Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## V.  THE PLAN

54.     The Plan is a defined contribution 401(k) profit-sharing plan. Accordingly, the Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each participant and for benefits based solely upon the amount contributed to those accounts, and any income, expense, gains and losses, and any forfeitures of accounts of the participants which may be allocated to such participant's account.

55.     Eligible plan members are automatically enrolled and include those who "are a line pilot, flight management pilot, or pilot instructor who is on the pilot system seniority list and is employed by United."   Contract employees, independent contractors, and non-pilots are not eligible for the Plan.

56.     An "Account" under the Plan means "the aggregate of all of a Participant's (or such Participant's Beneficiary's) Contribution Sources under the Plan."

14

57.     United is the Plan Administrator and a named fiduciary of the Plan within the meaning of ERISA § 402.

58.     Charles Schwab Trust Company is the Plan's Trustee and executes investment transactions and makes distributions to participants.

### *Contributions*

59.     There are several types of contributions that participants can add to their account, including: regular pre-tax and Roth 401(k) deferral contributions; post-tax contributions; and, in specific situations, catch-up and rollover contributions.

60.     Further, with each payroll period, United makes direct contributions of: (a) 9% of the participant's eligible earnings to their individual B-Plan subaccount in the Plan; and (b) 7% of the participant's eligible earnings to their individual C-Plan subaccount in the Plan. United may also make certain other contributions, such as un-awarded vacation forfeiture contributions, on the participant's behalf to the Plan.

61.     Participants are always 100% vested in the contributions to their account and any investment earnings on those contributions.

## VI.   THE PLAN WAS NOT MANAGED IN A PRUDENT MANNER

### A.  The Totality of Circumstances Demonstrates That the Plan Fiduciaries Failed to Administer the Plan in a Prudent Manner

62.     As described above, Defendants were fiduciaries of the Plan.

63.     ERISA "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 419 (2014) (quotation omitted). In addition to a duty to select prudent investments, under ERISA, a fiduciary "has a continuing duty to monitor [plan] investments and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting

investments." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015); *see also Hughes*, 595 U.S. at 175.

64. Plaintiff did not have and does not have actual knowledge of the specifics of Defendants' decision-making process with respect to the Plan, including Defendants' processes (and execution of such) for selecting, monitoring, and removing Plan investments, because this information is solely within the possession of Defendants prior to discovery. *See Braden v. Wal-mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) ("If Plaintiffs cannot state a claim without pleading facts which tend systematically to be in the sole possession of defendants, the remedial scheme of [ERISA] will fail, and the crucial rights secured by ERISA will suffer.")

65. For purposes of this Complaint, Plaintiff has drawn reasonable inferences regarding these processes based upon the numerous factors set forth below.

**B. Defendants Retained an Underperforming Fund in the Plan During The Class Period**

66. Defendants lacked a prudent process to monitor Plan funds during the Class Period due to their failure to remove underperforming funds in the Large Cap Fund.

67. The Large Cap Fund is identified, at times, by the following six letter symbol: RAPLCG.

68. The Large Cap Fund "has risk characteristics comparable to those of the Russell 1000 Growth Index."

69. The Russell 1000 Growth Index:

> measures the performance of the largecap growth segment of the US equity universe. It includes those Russell 1000 companies with relatively higher price-to-book ratios, higher I/B/E/S forecast medium term (2 year) growth and higher sales per share historical growth (5 years). The Russell 1000 Growth Index is constructed to provide a comprehensive and unbiased barometer for the large-cap growth segment. The index is completely reconstituted annually to ensure new and growing equities are included and that the represented companies continue to reflect growth characteristics.

Index factsheet; Russell 1000 Growth Index.  www.lseg.com/ftse-russell

70.     To buy the Russell 1000 Growth, investors may simply purchase an Exchange Traded Fund (ETF) or mutual fund that tracks the index, like the iShares Russell 1000 Growth ETF (IWF) or Vanguard Russell 1000 Growth ETF (VONG).

71.     In fact, the Large Cap Fund specifically refers to the Russell 1000 Growth Index as the relevant benchmark.  Indeed, the Defendants specifically chose the Russell 1000 Growth Index as the benchmark for the Large Cap Fund in 2014.  In short, the Defendants chose this as the meaningful benchmark.

72.     The Large Cap Fund's multi-manager structure includes investments in Sands Capital Management Select Growth Equity, T. Rowe Price Large Cap Growth, and Fidelity US Government Money Market.

73.     The Large Cap Fund currently has a target allocation among the following two Investment Managers: Sands Capital Management Select Growth Equity (48.5%) and T. Rowe Price Large Cap Growth (48.5%).

74.     As shown in the chart below, the Large Cap Fund did not achieve, but rather substantially underperformed the benchmark over the 1-, 3-, 5-, and 10-year periods ending on December 31, 2024.

75.     As set forth below, the chart's underlying methodology illustrates the average annual return over the 1-, 3-, 5-, and 10-year periods ending on December 31, 2024:

|  | 1/1/24-12/31/24 | 1/1/22-12/31/24 | 1/1/20-12/31/24 | 1/1/15-12/31/24 |
|---|---|---|---|---|
|  | 1 YR | 3 YR | 5 YR | 10 YR |
| Benchmark - Russell 1000 Growth Index | 33.36% | 10.47% | 18.96% | 16.78% |
| Large Cap Fund | 27.89% | 4.08% | 14.35% | 14.49% |
| Large Cap Fund Value Added Per Year | *-5.47%* | *-6.39%* | *-4.61%* | *-2.29%* |

76.     As set forth above, the Large Cap Fund underperformed on an ***average annual basis*** over every relevant timeframe.

77.     In short, this fund underperformed the very benchmark that Defendants were required to compare with since 2014.

78.     Also as set forth above, the Large Cap Fund is comprised of two main sub-funds.

79.     One of the two sub-funds, the Sands Capital Management Select Growth Equity fund, has substantially underperformed the Russell 1000 Growth Index Fund.

80.     In fact, the Sands Capital Management Select Growth Fund did not achieve and substantially underperformed the benchmark over the 1-, 3-, 5-, and 10-year periods ending on December 31, 2024.

81.     As set forth below, the chart's underlying methodology illustrates the average annual return over the 1-, 3-, 5-, and 10-year periods ending on December 31, 2024:[7]

|  | 1/1/24-12/31/24 | 1/1/22-12/31/24 | 1/1/20-12/31/24 | 1/1/15-12/31/24 |
|---|---|---|---|---|
|  | 1 YR | 3 YR | 5 YR | 10 YR |
| Benchmark - Russell 1000 Growth Index | 33.40% | 10.50% | 19.00% | 16.80% |
| Sands Capital Select Growth Fund | 24.30% | -1.30% | 11.60% | 12.30% |
| Sands Capital Value Added Per Year | *-9.10%* | *-11.80%* | *-7.40%* | *-4.50%* |

82.     As set forth above, the Sands Capital Management Select Growth Fund (approximately half of the Large Cap Fund) underperformed on an ***average annual basis*** over ***every*** relevant timeframe.

---

[7] The figures set forth herein refer to only one decimal place (and, consequently, rounded) as the Sands documents only provide one decimal place when providing a comparator between its figures and the Russell 1000 Growth Fund.

83.     In short, this fund underperformed the very benchmark that Defendants were required to compare with since 2014.

### C. Background on Morningstar

84.     Morningstar, Inc. ("Morningstar") is an American financial services firm headquartered in Chicago, Illinois that provides independent investment insights and services.[8]

85.     Morningstar's fund analysis and research, explained below, are commonly used by courts in this Circuit when evaluating fund performance in ERISA duty of prudence actions. *See e.g.*, *Gaines v. BDO USA, LLP*, 663 F.Supp.3d 821 (N.D. Ill. 2023); *Russell v. Illinois Tool Works, Inc.*, No. 22-cv-2492, 2024 WL 2892837 (N.D. Ill. June 10, 2024); *Baird v. Steel Dynamics, Inc.*, No. 1:23-CV-00356-CCB-SLC, 2024 WL 3983741 (N.D. Ind. Aug. 29, 2024); *Remied v. NorthSHore Univ. HealthSystem*, No. 22-cv-2578, 2024 WL 3251331 (N.D. Ill. July 1, 2024).

86.     Morningstar evaluates funds based on three key pillars – Process, People and Parent. Morningstar also assesses Performance and Price when assigning "Medalist Ratings" to investment vehicles. The Medalist Ratings indicate which investments Morningstar believes are likely to outperform a relevant index or peer group of funds' average on a risk-adjusted basis over time.

87.     The Process pillar evaluates "what is the fund's strategy and does management have a competitive advantage enabling it to execute the process well and consistently over time?"

88.     The People pillar evaluates "what is Morningstar's assessment of the manager's talent, tenure, and resources?"

---

[8]*Morningstar*, available at: https://www.linkedin.com/company/morningstar/ (last visited February 14, 2025).

89.     The Parent pillar evaluates "what priorities prevail at the firm? Stewardship or salesmanship?"[9]

90.     For the Medalist Ratings, the Performance pillar evaluates whether "the fund's performance pattern [is] logical given its process? Has the fund earned its keep with strong risk-adjusted returns over relevant time periods?" Performance is not a distinct pillar. Rather, Morningstar considers performance within the context of the other pillar assessments it conducts, notably People and Process.

91.     Lastly, for the Medalist Ratings, the Price pillar evaluates whether "the fund [is] a good value proposition compared with similar funds sold through similar channels?" Morningstar takes fees into account when assigning ratings to vehicles but does not maintain a separate Price Pillar.

92.     As set forth above, the Plan's Large Cap Fund consistently underperformed its relevant benchmark over 1-, 3-, 5-, and 10-year periods.

93.     In addition to the above, Morningstar also reviewed one of the two portions of the Large Cap Fund's investments – the Sands Capital Management Select Growth Fund.

94.     Morningstar regularly reviewed the publicly available version of the Sands Capital Management Select Growth Fund, identified with the ticker symbol "CISGX." As of December 31, 2024, Morningstar rated Sands Capital Management Select Growth Fund's "process" as below average. As of October 2024, Morningstar rated Sands Capital Select Growth Fund's "people" as below average.

95.     Morningstar also considers an investment option's risk and return categories. As of October 2024, Morningstar considered Sands Capital Select Growth Fund's "risk" to be "high"

---

[9] Keith Reid-Cleveland, *Morningstar Medalist Rating for Funds*, Morningstar (Apr. 20, 2023), https://www.morningstar.com/investing-definitions/morningstar-medalist-rating-for-funds.

versus the category.  This is the highest risk category. Morningstar considered Sands Capital Select Growth Fund's "return" to be "low" versus the category.  This is the lowest return category.

96.     Furthermore, as of January 31, 2025, Morningstar provided 50 comparables to the Sands Capital Select Growth Fund available to the public (ticker CISGX).

97.     According to Morningstar's "Ask Mo" research function, the selection of comparable funds involves a multi-step process:

> "According to Morningstar's research, the selection of comparable funds involves a multi-step process. Initially, the user selects an allocation strategy to compare, which can include various investment types such as open-end and exchange-traded funds, collective investment trusts, separate accounts, and model portfolios.  By default, the peer group is limited to allocation vehicles sharing the same domicile and investment type as the chosen strategy.  [. . .] Furthermore, Morningstar's fund similarity methodology begins by defining a peer group universe of related funds to the input fund, focusing on open-end and exchange-traded funds globally. The Morningstar Category classification system also plays a role by grouping funds considered close investment alternatives based on criteria such as tax treatment, legal characteristics, benchmarks, and asset class exposures, ensuring that performance and statistical measures like fees are comparable. This comprehensive approach allows for effective comparison and selection of comparable funds."[10]

98.     In January 2025, Morningstar provided 50 comparable investments to the publicly available Sands Capital Select Growth Fund.

99.     The vast majority of the selected comparable funds also explicitly selected the Russell 1000 Growth Index as the relevant benchmark.

100.     And as set forth below, the Sands Capital Select Growth Fund was the ***worst performing fund*** on both a 5- and 10-year basis out of the ***entire*** 50 comparable investment

---

[10] Morningstar, *Comparables*, available at: https://www.morningstar.com/search?query=comparables (last visited Dec. 8, 2025).

options.

101.    Each and every one of the 50 selected comparable investments performed above the Sands Capital Select Growth Fund and closer to or above the Russell 1000 Growth Index.

102.    In this way, the Defendants could have selected at least 50 other comparator funds, each of which outperformed the Sands Capital Management Select Growth Fund as set forth below[11]:

| | | 1/1/24-12/31/24 | 1/1/22-12/31/24 | 1/1/20-12/31/24 | 1/1/15-12/31/24 |
|---|---|---|---|---|---|
| **Large Cap Fund Relevant Portion** | | 1 YR | 3 YR | 5 YR | 10 YR |
| Sands Capital Select Growth Fund | | 24.30% | -1.30% | 11.60% | 12.30% |
| **50 Comparator Funds** | Ticker | 1 YR | 3 YR | 5 YR | 10 YR |
| JPMorgan Large Cap Growth R6 | JLGMX | 36.28% | 9.55% | 20.24% | 14.95% |
| Fidelity Trend | FTRNX | 39.77% | 9.00% | 19.37% | 15.35% |
| Loomis Sayles Growth Y | LSGRX | 36.32% | 9.55% | 18.13% | 23.05% |
| Columbia Disciplined Growth Inst 3 | CGQYX | 30.33% | 8.76% | 17.16% | 15.32% |
| Fidelity Focused Stock | FTQGX | 38.19% | 9.66% | 17.00% | 15.49% |
| Fidelitiy Growth Company K6 | FGKFX | 40.43% | 10.49% | 22.88% | 17.26% |
| Fidelity SAI US Momentum | FUMIX | 35.43% | 10.32% | 15.43% | 16.37% |
| Fidelity SAI US Quality Index | FUQIX | 25.21% | 8.64% | 15.34% | 17.33% |
| Fidelity Series Large Cp Grwth Idx | FHOFX | 35.23% | 5.58% | 18.95% | 15.40% |
| Fisher IIG US Lrg Cp Eq Env Val | ILESX | 27.61% | 7.38% | 17.33% | 12.59% |
| Principal Blue Chip Institutional | PBCKX | _**23.14%**_ | 4.97% | 14.68% | 16.28% |
| T. Rowe Price All-Cap Opp. Fund | PRWAX | 26.35% | 8.50% | 17.30% | 15.69% |
| AQR Large Cap Momentum Style I | AMOMX | 29.40% | 9.47% | 14.57% | 15.45% |
| Brown Advisory Sustainable Growth I | BAFWX | _**22.22%**_ | 9.31% | 15.90% | 13.83% |
| Calvert US Large Cap Growth R I | CGJIX | 29.29% | 10.02% | 17.42% | 16.44% |
| Commerce Growth | CFGRX | 32.70% | 7.16% | 16.46% | 15.51% |
| DFA US Large Cap Growth Instl | DUSLX | 24.83% | 10.18% | 15.06% | 18.08% |
| Fidelity Advisor Equity Growth I | EQPGX | _**17.82%**_ | 10.31% | 18.68% | 20.34% |
| Fidelity Advisor Founders Z | FIFWX | 30.35% | 10.76% | 15.11% | 15.27% |
| Fidelity Blue Chip Growth | FBGRX | 42.16% | 10.73% | 21.61% | 16.53% |

[11] Sands Capital Management Select Growth Fund trailed **all fifty** comparables for 5- and 10-year periods, outperformed just four of them on a 1-year basis and outperformed just one of them during a 3-year average as set forth in the bolded/italicized investments on the chart.

| | | | | | |
|---|---|---|---|---|---|
| Fidelity Blue Chip Growth K6 | FBCGX | 41.07% | 10.17% | 21.88% | 18.95% |
| Fidelity Contrafund | FCNTX | 37.05% | 10.07% | 17.49% | 16.38% |
| Fidelity Contrafund K6 | FLCNX | 36.44% | 9.55% | 17.12% | 18.95% |
| Fidelity Growth Company Fund | FDGRX | 39.29% | 9.55% | 22.38% | 16.11% |
| Fidelity Growth Discovery | FDSVX | 32.21% | 9.22% | 18.66% | 17.70% |
| Fidelity Large Cap Growth Idx | FSPGX | 35.17% | 8.83% | 18.91% | 19.99% |
| Fidelity Nasdaq Composite Index | FNCMX | 28.72% | 26.86% | 17.53% | 26.86% |
| Fidelity OTC | FOCPX | 36.66% | 7.69% | 19.03% | 15.99% |
| Fidelity OTC K6 | FOKFX | 34.80% | 5.24% | 19.07% | 13.23% |
| GuideStone Funds Growth Equity | GEIYX | 34.90% | ***-4.39%*** | 26.86% | 14.74% |
| Harbor Capital Appreciation Instl | HACAX | 32.99% | 10.42% | 17.38% | 16.70% |
| JHancock Blue Chip Growth NAV | MIGFX | ***17.50%*** | 8.49% | 12.48% | 15.13% |
| MFS Massachusetts Inv Gr Stk A | MSEQX | 51.47% | 6.19% | 13.58% | 14.98% |
| Morgan Stanley Inst Growth I | TILIX | 35.15% | 7.28% | 18.88% | 15.79% |
| Nuveen Large Cap Gr Idx R6 | TILGX | 31.41% | 7.55% | 16.54% | 15.18% |
| Nuveen Large Cap Growth R6 | SPFZX | 34.45% | 10.43% | 16.23% | 17.85% |
| PGIM Jennison Focused Growth Z | PJFAX | 32.74% | 7.54% | 17.31% | 14.88% |
| PGIM Jennison Growth A | MMDEX | 35.46% | 7.72% | 16.92% | 15.02% |
| Praxis Growth Index I | SWLGX | 35.16% | 7.47% | 18.89% | 16.12% |
| Schwab ® US Large-Cap Growth Idx | TRBCX | 37.57% | 8.00% | 14.53% | 14.76% |
| T. Rowe Price Blue Chip Growth | TPLGX | 37.71% | 8.15% | 14.68% | 15.21% |
| T. Rowe Price Instl Large Cap Core | TRLGX | 32.84% | 9.05% | 16.35% | 15.59% |
| T. Rowe Price Tax-Efficient Equity | PREFX | 34.37% | 11.19% | 15.80% | 17.53% |
| Thrivent Large Cap Growth S | THLCX | 31.74% | 7.57% | 17.23% | 16.28% |
| Vanguard Growth Index Investor | VIGRX | 34.74% | 11.62% | 18.19% | 16.37% |
| Voya Russell Large Cap Growth Port | IRLNX | 36.48% | 6.06% | 19.97% | 17.85% |
| American Century Focused Dynamic | ACFSX | 45.88% | 5.09% | 18.29% | 14.32% |
| Baron Durable Advantage Inst. | BDAIX | 28.54% | 9.55% | 17.19% | 14.95% |
| Baron Opportunity Retail | BIOPX | 42.99% | 9.00% | 20.31% | 15.35% |
| BlackRock Capital Appreciation K | BFGBX | 34.39% | 9.55% | 14.58% | 23.05% |

103.    In short, the Sands Capital Management Select Growth Fund, in particular, consistently underperformed both its explicitly selected benchmark (the Russell 1000 Growth Index) as well as ***all 50*** of the Morningstar comparative investment options.

104.    As a consequence, the Large Cap Fund as a whole also underperforms virtually

23

every of the 50 Morningstar comparative investment options as well.[12]

105.     A prudent fiduciary should have been aware of better preforming alternatives, relative underperformance of the Large Cap Fund and the Sands Select Growth Equity Fund as a component part, and replaced the Large Cap Fund, and/or the sub-fund identified as the Sands Select Growth Equity Fund, with a better performing alternative. Defendants' failure to do so is a clear indication that the Plan lacked a prudent process for monitoring the cost and performance of the funds in the Plan.

**FIRST CLAIM FOR RELIEF**
**Breaches of Fiduciary Duty of Prudence**
**(Asserted Against the Committees)**

106.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

107.     At all relevant times, the Committees and its members ("Prudence Defendants") were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

108.     As fiduciaries of the Plan, these Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included managing the assets of the Plan for the sole and exclusive benefit of the Plan's participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

109.     The Prudence Defendants breached these fiduciary duties in multiple respects as

---

[12] In particular, the Large Cap Fund outperforms 5 of 50 comparables for 1 year, 1 of 50 comparables for 3 years, 2 of 50 comparables for 5 years, and 4 of 50 comparables for 10 years.

discussed throughout this Complaint. They did not make decisions regarding the Plan's investment lineup based solely on the merits of each investment and what was in the best interest of the Plan's participants. Instead, the Prudence Defendants selected and retained investment options in the Plan despite the fund's (and sub-fund's) demonstrated history of underperformance, relative to relevant benchmarks.

110.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars in losses due to the significantly lower net investment returns. Had the Prudence Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and the Plan's participants would have had more money available to them for their retirement.

111.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Prudence Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for the Prudence Defendants' breaches, as set forth in his Prayer for Relief.

112.    The Prudence Defendants knowingly participated in each breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge such Defendant's own duties, and knew of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

## SECOND CLAIM FOR RELIEF
### Failure to Adequately Monitor Other Fiduciaries
### (Asserted Against United and the Board Defendants)

113.    Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

114.    The Board Defendants and United (the "Monitoring Defendants") had the authority and obligation to monitor the Committees and were aware that the Committees had critical responsibilities as a fiduciary of the Plan.

115.    In light of this authority, the Monitoring Defendants had a duty to monitor the Committees and ensure that the Committees were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the Committees were not fulfilling those duties.

116.    The Monitoring Defendants also had a duty to ensure that the Committees possessed the necessary qualifications and experience to carry out their duties; had adequate financial resources and information; maintained adequate records of the information on which it based its decisions and analysis with respect to the Plan's investments; and reported regularly to the Monitoring Defendants.

117.    The Monitoring Defendants breached their fiduciary monitoring duties by, among other things:

   a.    Failing to monitor and evaluate the performance of the Committees or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the Committees' imprudent actions and omissions;

   b.    failing to monitor the processes by which the Plan's investments were evaluated; and

c.     failing to remove the Committees as a fiduciaries whose performance was inadequate in that it continued to maintain imprudent and poorly performing investments within the Plan, all to the detriment of the Plan and the retirement savings of the Plan's participants.

118.     As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars of losses. Had the Monitoring Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses and participants of the Plan would have had more money available to them for their retirement.

119.     Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Monitoring Defendants are liable to restore to the Plan all losses caused by their failure to adequately monitor the Committees. In addition, Plaintiff is entitled to equitable relief and other appropriate relief as set forth in his Prayer for Relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A.     A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B.     Designation of Plaintiff as Class Representative and designation of Plaintiff's counsel as Class Counsel;

C.     A Declaration that the Defendants, and each of them, have breached their fiduciary duties under ERISA;

D.     An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, and to restore to the Plan all

profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

E.      An order requiring the Company Defendants to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, or a surcharge against the Company Defendant as necessary to effectuate said relief, and to prevent the Company Defendant's unjust enrichment;

F.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G.      An order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

H.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan's fiduciaries deemed to have breached their fiduciary duties;

I.      An award of pre-judgment interest;

J.      An award of costs pursuant to 29 U.S.C. § 1132(g);

K.      An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

L.      Such other and further relief as the Court deems equitable and just.

Dated: December 16, 2025                    Respectfully Submitted,

                                            By: */s/* Carl Malmstrom

Carl Malmstrom
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC**
111 West Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

Matthew M. Guiney*
Benjamin Y. Kaufman*
Patrick Donovan*
Rourke C. Donahue*
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
guiney@whafh.com
kaufman@whafh.com
donovan@whafh.com
donahue@whafh.com

Don Bivens*
Albert Plawinski*
**DON BIVENS, PLLC**
15169 N. Scottsdale Rd., Suite 205
Scottsdale, AZ 85254
Tel: (602) 708-1450
don@donbivens.com
albert@donbivens.com

* to be admitted *pro hac vice*

***Attorneys for Plaintiff and the
Proposed Class***